IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

FREDERICK DEVELL PIMPTON    §
TDCJ-CID No. 1614913,          §
                               §
      Plaintiff,              §
                               §
v.                              §        2:23-CV-00087-Z-BR
                               §
BRYAN COLLIER, *et al.,*       §
                               §
      Defendants.          §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT

Before the Court is the Amended Complaint (ECF 9) filed by Plaintiff Frederick Devell Pimpton ("Pimpton") against various Defendants, alleging violations of his civil rights. Pimpton filed this lawsuit *pro se* while a prisoner at the Gib Lewis Unit of the Texas Department of Criminal Justice ("TDCJ") in Woodville, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Pimpton's Amended Complaint be DISMISSED as frivolous pursuant to 28 U.S.C. §§ 1915 and 1915A.

## I. STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable

1

basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Legal Analysis

### A.    Factual Background.[1]

On March 23, 2021, Officer T. Mayfield ("Mayfield") accused Pimpton of illegally possessing a Coolpad cellular telephone. Pimpton claims that Mayfield's allegation was false. He

---

[1]These background facts are taken from Plaintiff's Amended Complaint (ECF 9), memorandum of law (ECF 5), and questionnaire responses (ECF 11), and are assumed to be true for the purpose of evaluating the merits of Plaintiff's causes of action.

further alleges that Mayfield fabricated evidence and improperly confiscated Pimpton's books, papers and legal documents, which were either lost or destroyed by Mayfield. (ECF 9 at 4). On March 26, 2021, disciplinary action 20210141675 was heard against Pimpton for possession of the illegal cell phone. Pimpton states that, at the hearing, he was not allowed to provide exculpatory evidence to prove his innocence. He was found guilty and, as a result, was moved to high security and lost 365 days of good-time credits. He was placed in high security from March 26, 2021, to August 24, 2021, when his disciplinary conviction was overturned as a result of a grievance he filed. (ECF 11 at 8).

On September 2, 2021, the disciplinary case was reheard (at the warden's discretion, Pimpton was told) in Case No. 20210255410, and he again was found guilty. (ECF 9 at 6). As a result, Pimpton was returned to high security status, and he lost six months of good-time credits. While in high security, he states, he was housed with psychiatric patients in unsanitary conditions that included cells infested with rats and insects, and toilet water running across the floor. He further alleges that he was unable to purchase supplies from the commissary. Additional personal property was stolen while he was being moved by a guard known as "the tooth fairy." (ECF 9 at 8). He was in high security from September 2, 2021, to March 23, 2022. (ECF 11 at 8).

Pimpton filed this lawsuit on May 22, 2023, alleging a variety of constitutional violations stemming from the disciplinary rehearing, conviction and subsequent punishment. (ECF 9 at 3). In addition, he claims that Defendant Bryan Collier ("Collier") directly participated in the deprivation of his rights by implementing policies and directives that "create and cause significant hardship" to Pimpton. (ECF 9 at 7). He does not allege that he suffered any physical injuries in connection with the alleged violations of his civil rights. (ECF 11 at 6-7).

On March 18, 2024, the Court held that Pimpton's claims for return of his good-time credits

should have been brought as a habeas corpus petition. Therefore, it severed the habeas claim and initiated Case No. 2:24-cv-51-Z-BR to address Pimpton's potential claim for loss of good-time credits. (ECF 12). Pimpton's habeas corpus case remains pending, and the claims remaining in this case are: (1) whether Collier subjected Pimpton to cruel and unusual punishment by implementing policies that allowed for rehearing his disciplinary case; (2) whether the remaining Defendants violated Pimpton's civil rights by rehearing his disciplinary case; (3) whether Pimpton's civil rights were violated by the loss or destruction of his property; (4) whether Pimpton's civil rights were violated by housing him in high security, in unsanitary conditions and with psychiatric patients; and (5) whether Defendants retaliated against him for filing the grievance that resulted in overturning his initial disciplinary conviction.

**B.    Pimpton's Request for Compensatory Damages.**

Under the PLRA, no "[f]ederal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement "applies to all federal civil actions in which a prisoner alleges a constitutional violation." *Geiger*, 404 F.3d at 375. The application of Section 1997e(e) is based on "the relief sought, and not the underlying substantive violation." *Id.*; *see also Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 603, 605 (5th Cir. 2008) ("We have held that the application of [Section 1997e(e)] ... turns on the relief sought by a prisoner, and that it prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged.").

Pimpton does not allege that he suffered any physical injuries in connection with his claims; he claims only property damage due to loss of his personal property, and emotional injury because he was "in a state of serious depression" as a result of the facts giving rise to his lawsuit.

(ECF 11 at 6-7). Because he does not allege physical injury, he is not entitled to recover compensatory damages. *See Hill v. Fagan*, No. 1:16-CV-185-BL, 2018 WL 3244617, at *3 (N.D. Tex. June 4, 2018) (recommending dismissal of prisoner's claim for compensatory damages against defendant because prisoner failed to allege a physical injury arising from the purported due process violation), *R. & R. adopted by* 2018 WL 3242274 (N.D. Tex. July 3, 2018). Pimpton's claim for compensatory damages should be dismissed. Therefore, the only remaining claims for relief potentially available to Pimpton are those for injunctive relief, and nominal and punitive damages.[2]

**C.     Claim for Injunctive Relief.**

Pimpton seeks an injunction against Collier "and his subordinates" to stop retaliating against him for "seeking redress for their wrongs." (ECF 5 at 9). Pimpton's claims arose while he was housed at the Clements Unit of the TDCJ. However, at the time he filed this case, he was housed at the Gib Lewis Unit. (ECF 3 at 1, 3). He has alleged no facts showing that anyone at Gib Lewis is retaliating against him for the grievance he filed while at Clements. All of the named Defendants other than Collier are located at the Clements Unit.[3] As a result, Pimpton's claims for injunctive relief are moot and should be dismissed with prejudice. *See Simms v. Preston E. Smith Med. Dep't*, 854 F. App'x 603, 603 (5th Cir. 2021) (per curiam) (affirming district court's dismissal of prisoner's complaint where prisoner only sought injunctive relief against a TDCJ unit from which he had since been transferred); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The

---

[2]Although Pimpton's Amended Complaint does not indicate that he seeks nominal damages, he does assert a claim for punitive damages; therefore, the Court will construe his Complaint broadly and assume for the purposes of this FCR that he seeks nominal damages to support his punitive damages request.

[3]Pimpton has asserted no facts alleging that Collier is personally retaliating against him for filing a grievance; instead, his claim against Collier is solely based on prison policies and procedures.

5

transfer of a prisoner out of an [offending] institution often will render his claims for injunctive relief moot.").

D.    **Claims Against Defendants in their Official Capacities.**

Pimpton states that he is suing Defendants in their individual and official capacities. (ECF 5 at 3). Claims against Defendants in their official capacity are without merit in that they are simply another way of suing the TDCJ, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the claims against Defendants in their official capacities should be dismissed.

E.    **Claim Against Defendant Collier.**

Pimpton alleges that Collier violated his constitutional right to be free from cruel and unusual punishment by creating a policy or custom that caused him "undue hardship." (ECF 9 at 7, ECF 11 at 1). It is well established that supervisory officials such as Collier are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy or custom that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). Supervisory liability exists without overt

personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted).

Pimpton does not allege that Collier was personally involved in the facts giving rise to his lawsuit; therefore, the sole issue is whether Pimpton has alleged that Collier created a policy or custom that violated Pimpton's rights. In order to establish a claim for a deficient policy that caused the violation of a constitutional right under Section 1983, a plaintiff must identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Serv.*, 435 U.S. 658, 694-95 (1978).

Pimpton specifically points to "SPTP Policies 10.0 and 5.18.3, and Administrative Directive 04.11, Security Precaution Designators" as the policies that purportedly violate his constitutional rights. These policies, Pimpton states, were "used to create and cause significant hardship to Plaintiff without just and legal cause." (ECF 9 at 7). However, he does not specify how these policies caused a deprivation of his rights, nor does he allege facts that support his allegations. Most importantly, Pimpton does not identify affirmative acts by Collier that created the policies of which he complains. Rather, Pimpton simply names Collier and claims that he should be held liable for the referenced TDCJ policies. Pimpton does not plead facts sufficient to survive screening concerning a policy or custom within TDCJ related to the punishments he suffered as a result of his disciplinary conviction or his use of the grievance process. *See Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts."). To the extent that the "undue hardship" allegedly caused by these

policies resulted in the conditions of confinement issues discussed below, such conditions do not create a constitutional violation. Accordingly, Pimpton's claims against Collier should be dismissed.

**F.    Due Process Claim Against Defendants Gonzales, Judd and Tovar.**

Pimpton alleges that Gonzales, Judd and Tovar violated his due process rights by re-hearing the disciplinary case against him after it already had been overturned, allegedly due to insufficient evidence. (ECF 4 at 2, ECF 11 at 3).[4]

Rehearing a disciplinary case does not implicate constitutional protections against double jeopardy, which apply only in criminal prosecutions. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *see also Sanchez v. Allen*, 611 F. App'x 792, 796 (5th Cir. 2015) (unpublished) ("[T]he constitutional proscription against double jeopardy does not apply to [the inmate's] disciplinary proceeding."); *Turner v. Johnson*, 46 F. Supp.2d 655, 666 (S.D. Tex. 1999) ("It is well settled that prison disciplinary proceedings do not constitute criminal prosecutions. Hence, they do not implicate the Double Jeopardy Clause, as its applicability is limited to proceedings that are essentially criminal in nature.") (internal citations and quotations omitted). The rehearing of Pimpton's disciplinary charge does not violate his due process rights.

In addition, Pimpton's claim for monetary damages based on the results of his disciplinary hearing is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a prisoner may not

---

[4]Whether the good-time credits were taken improperly in the second disciplinary case is an issue for Pimpton's pending habeas corpus petition; as such, the merits of this claim will not be addressed here. For the purposes of this FCR only, however, the Court will assume the truth of Pimpton's allegation that he was wrongfully convicted in the disciplinary hearing.

"seek[ ] damages in a § 1983 suit" if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Otherwise, Section 1983 could be used as a tool effectively to reverse state convictions without recourse to more proper means, such as habeas corpus. Thus, plaintiffs convicted of crimes may not use Section 1983 to challenge the validity or duration of their sentences. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). Because *Heck* applies to both the validity and the duration of confinement, it extends to prison disciplinary convictions in addition to criminal convictions. *Gray v. White*, 18 F.4th 463 (5th Cir. 2021) (citing *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)).

*Heck* "precludes § 1983 litigation in the prison-disciplinary-proceeding context where it would 'negate [the prisoner's] disciplinary conviction' if negating that conviction would 'affect[] the duration of his sentence by restoring his good time credits.'" *Gray*, 18 F.4th at 467 (quoting *Bourne*, 921 F.3d at 491). "Whether the plaintiff in fact seeks the restoration of good time credits, rather than another remedy such as damages, is immaterial." *Id.* (citing *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020)). Pimpton's claim for damages based upon his assertion that his disciplinary conviction was improper implicates *Heck* considerations and thus is barred.

Not all of Pimpton's disciplinary violations resulted in the loss of good time credits, however. Pimpton states that, not only did he forfeit six months of good time credit, he also was moved to high-security status for six months, followed by medium-security status for another six months, plus a loss of commissary privileges. (ECF 11 at 4-6). Disciplinary sanctions of this type bear on the conditions of confinement rather than that confinement's validity or duration and, thus, are not barred by *Heck*. *Muhammad*, 540 U.S. at 750.

To implicate the protections of the Due Process Clause, Pimpton must show the loss of a liberty interest suffered as a result of his allegedly improper conviction and subsequent

punishment. A prisoner has a liberty interest if he shows that the punishment will inevitably affect the duration of his sentence or that it poses an "atypical and significant hardship." *Sandin v. Conner,* 515 U.S. 472, 484 (1995) (A prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the [prisoner] in relation to the ordinary incidents of prison life.") (internal citation omitted). The Due Process Clause "does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). The salient question is whether Pimpton has properly alleged facts showing that the changes to his conditions of confinement imposed an "atypical and significant hardship" upon him, as compared to ordinary prison life.

The punishments imposed following Pimpton's second disciplinary proceeding (other than loss of good time credits, which is not addressed here) do not rise to the level of a liberty interest and are "merely changes in the conditions of [Pimpton's] confinement [that] do not implicate due process concerns." *Id.* at 768 (concluding that commissary and cell restrictions do not implicate due process concerns); *Taylor v. Swift*, 2015 WL 5834057, at *1 (5th Cir. Oct. 7, 2015) (per curiam) (finding that loss of recreation and commissary privileges does not result in a deprivation of a liberty interest); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("any alleged due process or other constitutional violation arising from [custodial] classification is indisputably meritless") (quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) ("Inmates have no protectable property or liberty interest in custodial classifications."). "It is well-settled that '[p]rison officials must have broad discretion free from judicial intervention in classifying prisoners in terms of their custodial status.'" *McCord v. Maggio*, 703 F.2d 909 (5th Cir. 1990)

(quoting *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983)). Pimpton's claims against Gonzales, Judd and Tovar for rehearing the disciplinary case against him and for imposing disciplinary measures (other than loss of good-time credits) do not state a constitutional violation and should be dismissed.[5]

## G.    Eighth Amendment/Unsanitary Conditions Claim.

Pimpton alleges that he was subjected to undue hardship based on the conditions of his confinement while classified as high security; specifically, he was housed with psychiatric patients, exposed to the remnants of toxic chemicals (in the form of chemical agents used to subdue prisoners that had been housed in his cell before he was placed there), and housed with rats and insects in a cell with toilet water running across the floor. He further was unable to purchase supplies from the commissary due to his classification.

While the U.S. Constitution does not mandate comfortable prisons, it does require humane ones, and the Eighth Amendment governs the conditions under which inmates are confined. *Reagan v. Burns,* No. 3:16-cv-2590-G-BH, 2019 WL 6733023 at * 13 (N.D. Tex. Oct. 30, 2019) (quoting *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989)). The Eighth Amendment does not protect prisoners from those conditions that merely cause "discomfort or inconvenience." *Wilson*, 878 F.2d at 849.

Only those officials who know of and disregard "an excessive risk to inmate health or safety" are liable under the Eighth Amendment for denying inmates humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official is deliberately

---

[5]Pimpton's assertions that his cell was unsanitary and that he was housed with psychiatric patients while in high security are addressed herein as a separate conditions of confinement claim; however, they do not state a claim for violation of due process as a "punishment" from the disciplinary procedure for the same reasons they do not state an Eighth Amendment violation, as outlined herein.

indifferent to a prisoner's safety when the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To act with deliberate indifference, a prison official must be subjectively aware of the risk; that is, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only deliberate indifference will suffice to state a claim; mere negligence is not sufficient. *Id.* at 837. The deliberate indifference standard is an extremely high standard to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Finally, a prisoner in a conditions of confinement case "must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*." *Reagan,* 2019 WL 6733023, at *13 (citing *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630-31 (5th Cir. 2003)); *see also Mayes v. Travis Slate Jail*, No. 07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008) ("A prisoner seeking to recover damages on a conditions of confinement claim must establish a physical injury that is more than *de minimis*.").

Assuming that Pimpton's description of his high security cell is accurate, he has alleged no facts showing that any of the named Defendants are responsible for his housing and/or the condition of his cell. (ECF 11 at 1-3). Further, when asked to state the factual basis for the claims against each Defendant, he makes no mention of their purported responsibility for the conditions of his confinement. (*Id.*). Even if Pimpton were able to demonstrate some physical harm beyond *de minimis* inconvenience, his claims would still be subject to dismissal because he has not sufficiently alleged that any of the named Defendants were deliberately indifferent to his plight. There are no allegations that Pimpton personally complained to any of the named Defendants about conditions of his cell. He makes no specific factual allegations that Defendants were subjectively

aware of a substantial risk of serious harm to him and failed to protect him from that harm. *Farmer*, 511 U.S. at 839-40. Even if Pimpton is attempting to allege that Defendants should have known he would be placed in an unsanitary cell when his classification was changed by virtue of the disciplinary conviction, such claim would fail. The "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *id.* at 838). Accordingly, Pimpton's Eighth Amendment claims regarding the conditions of his confinement while in high security lack an arguable basis in law or fact and should be dismissed as frivolous.

**H.    Retaliation Claims Against Defendants.**

Pimpton alleges that Defendants retaliated against him for utilizing the prison grievance procedure. Specifically, he claims that (1) nonparty Sgt. Charles L. Martin[6] attempted to assault him for filing a "retaliation grievance;" (2) he was transferred to the D. Wainright Unit; (3) his property, including legal documents, "came up missing;" (4) he was forced to drink polluted water; and (5) he was not allowed to receive funds like other inmates.  (ECF 5 at 5). Loss of privileges, cell restrictions, and prison transfers can constitute adverse retaliatory actions. *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *Jackson v. Cain*, 864 F.2d 1235, 1248 n.3 (5th Cir. 1989) (finding that an inmate does not have the constitutional right to select the location of his confinement, but transferring him in retaliation for exercising a constitutional right is unconstitutional).

When an inmate claims that he has been the subject of retaliation, he must show facts, not merely conclusions. *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.), *cert. denied*, 488 U.S. 840

---

[6]Martin is not a defendant in this case. Pimpton has provided no facts showing that any of the named Defendants have any connection to Martin, nor has he provided facts showing that Martin was acting at Defendants' request.

(1988). The plaintiff must present facts showing a retaliatory motive or the alleged conduct must itself raise an inference of retaliation in order to support a claim. *Id*. at 819. "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The fact that one event follows another in time does not amount to proof of retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.2d 885, 889 (5th Cir. 1995).

A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *Welsh v. Cammack,* No. 23-10961, 2024 WL 3649583 at *5 (5th Cir. 2024) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)). The Fifth Circuit has defined an actionable retaliatory adverse act as one "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). A plaintiff must offer direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. This is a "significant burden" *Id*. "Mere conclusory allegations of retaliation" are insufficient. *Id.; see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (Conclusory allegations amounting to a plaintiff's "personal belief that he is the victim of retaliation" are insufficient to state a claim for relief). Causation requires a showing that "but for the retaliatory motive the complained of incident … would not have occurred." *McDonald*, 132 F.3d at 231 (citation omitted).

When the retaliation claim involves a prison disciplinary matter, as here, a favorable

termination of the underlying disciplinary charge is not a prerequisite for bringing a retaliation claim. *Woods*, 60 F.3d at 1164. This is because "[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id*. at 1165 (citations omitted). Nevertheless, the existence of a "[legitimate] prison disciplinary report is highly probative, if not dispositive, of whether a defendant acts with a retaliatory animus." *See Rankin v. Pearson*, No. 5:11- CV-138-DCB-RHW, 2013 WL 1305517, at *6 (S.D. Miss. Mar. 26, 2013) (citing *Woods*, 60 F.3d at 1166), *aff'd* 612 F. App'x 204 (5th Cir. 2015).

Here, according to Pimpton's Complaint, none of the alleged retaliatory conduct occurred until after Pimpton was found guilty in a disciplinary hearing. Therefore, Pimpton cannot show that, "but for" retaliatory animus he would not have been subjected to a transfer and change in classification; instead, it demonstrates that Defendants had a reason to transfer him and increase his restrictions: the fact that he was found guilty of the disciplinary violation. *See Davis v. LeBlanc*, No. CV 16-15591, 2017 WL 979035, at *15 (E.D. La. Jan. 23, 2017) ("The record of [plaintiff's] conviction of disciplinary violations at [the prison] does not demonstrate 'but for' causation; instead, it demonstrates that [defendants] had a reasonable, non-retaliatory motivation for charging [plaintiff] with the violations."), *R. & R. adopted by* 2017 WL 959495 (E.D. La. Mar. 13, 2017).

Pimpton has provided no factual allegations supporting his claim of retaliation, nor has he provided a chronology of events from which retaliation may be inferred. Most importantly, however, he provides no facts to support his claim that the named Defendants were responsible for the alleged retaliatory acts. In his questionnaire responses, he does not allege that any named Defendant retaliated against him. (ECF 11). Pimpton provides nothing more than his personal belief that he is the victim of retaliation. Because Pimpton has not plausibly alleged facts showing

that any retaliatory motive was the cause for his disciplinary sanctions and classification change, rather than his violation of prison rules, he is unable to sustain his claim of retaliation against any of the Defendants, and it should be dismissed.[7]

## I.      Unreasonable Search and Seizure Claim Against Defendant Mayfield.

Pimpton alleges a violation of his Fourth Amendment right to be free from unreasonable search and seizure against Mayfield for taking Pimpton's "books, papers and legal documentation" from his cell. (ECF 4 at 4). However, Pimpton's claim fails as a matter of law. The Supreme Court has expressly held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also Rickerson v. Rust*, No. 5:17cv172, 2019 WL 8500865, at *9 (E.D. Tex. Nov. 13, 2019) (dismissing prisoner's claim that seizure of legal papers violated his Fourth Amendment rights because prisoners have no expectation of privacy in their cell), *R. & R. adopted by* 2020 WL 633582 (E.D. Tex. Feb. 11, 2020), *aff'd*, No. 20-40208, 2021 WL 5871885 (5th Cir. 2021). In *Hudson*, the Supreme Court reasoned that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.... Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is

---

[7]To the extent that Pimpton claims that Mayfield confiscated and destroyed his personal property in retaliation for filing a grievance, Mayfield's alleged actions do not support a retaliation claim. According to his Amended Complaint, Pimpton had not filed his grievance before the alleged seizure of his property occurred. In cases where the retaliatory conduct precedes the alleged protected constitutional activity, there is no causation to sustain a retaliation claim. *See, e.g., Peters v. Quarterman*, 252 F. App'x 705, 706 (5th Cir. 2007) (per curiam) ("Retaliation may be inferred from the exercise of the protected right to complain *followed* by an adverse act.")(emphasis added). Even if Pimpton's property was destroyed after he filed his grievance, he has provided no factual basis for his conclusory assertion that: (1) Mayfield destroyed his property; (2) that his property was intentionally destroyed as opposed to inadvertently lost; (3) such destruction occurred after the disciplinary conviction was overturned; or (4) that the property was destroyed as retaliation for Pimpton filing a grievance.

imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained." *Id.* at 526–27. These legitimate security concerns justify such searches, which are "a matter lodged in the sound discretion of the institutional officials." *Block v. Rutherford*, 468 U.S. 576, 591 (1984).

Nor does the Fourth Amendment prohibit seizure of Pimpton's personal property. "The Fourth Amendment's proscription of unreasonable seizures does not apply to prison officers who are seizing items from the cells of prisoners." *Kuykendall v. Collins*, No. 92-1868, 1993 WL 210350, at *2 (5th Cir. June 10, 1993); *see Hudson*, 468 U.S. at 528 n.8 (explaining that the Fourth Amendment does not apply to prison officials' seizure of prisoner's property because officials must be "free to seize from cells any articles which, in their view, disserve legitimate institutional interests"); *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (per curiam) ("[B]ecause an inmate does not have an expectation of privacy in his cell, [plaintiff] is unable to make a claim of unreasonable search and seizure under the Fourth Amendment"); *Tanksly v. Castro*, No. 01-11369, 2002 WL 753486, at *1 (5th Cir. Apr. 8, 2002) (unpublished) (affirming dismissal as frivolous prisoner's Fourth Amendment search and seizure claim). Therefore, because the Fourth Amendment does not apply to searches and seizures from a prison cell, Pimpton's claim against Mayfield should be dismissed.

## J.     Lost Property Claim.

Pimpton alleges that Mayfield confiscated his personal possessions, including "legal documentation" after falsely claiming that Pimpton possessed an illegal cell phone. (ECF 11 at 2). He further alleges that a nonparty guard known as "the tooth fairy" also improperly confiscated unspecified property. (ECF 9 at 8).[8] "Prisoners have a cognizable constitutionally protected

---

[8]The "tooth fairy," however, is not a defendant in this case.

property interest in their personal property." *Eubanks v. McCotter*, 802 F.2d 790, 793–94 (5th Cir. 1986). Nevertheless, under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post[-]deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.--Corpus Christi 2002).

Therefore, the initial question is whether Pimpton has alleged that Mayfield confiscated the personal property pursuant to a state policy or as "random, unauthorized conduct". The U.S. Supreme Court has noted that "[c]onduct is not 'random and unauthorized' … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of." *Zinerman v. Burch*, 494 US. 113, 115 (1990) (quoted in *Allen*, 388 F.3d at 149 (5th Cir. 2004)). Pimpton clearly and undisputedly alleges that Mayfield was acting illegally in confiscating his property, rather than pursuant to a state policy. (*See* ECF 9 at 4 ("In order to fabricate evidence against Plaintiff … Mayfield deprived him of his 4th Amendment right to be free from unreasonable searches and seizures. He took my books papers, and legal documents…"); and ECF 11 at 2 ("Mayfield fabricated evidence against Plaintiff when he took books, papers and legal documentation…")). Because Pimpton alleges that Mayfield's conduct was unauthorized, the *Parratt/Hudson* doctrine applies.

As a result, although Pimpton has a protected property interest in his personal property, "[a] prison official's failure to follow the prison's own policies, procedures or regulations does not

constitute a violation of due process, if constitutional minima are nevertheless met." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quotation marks and citations omitted). In *Brewster*, the Fifth Circuit Court of Appeals held that a due process claim was properly dismissed because Texas law provides the adequate post-deprivation remedy of conversion when property is taken without proper procedures. *Id.* Pimpton does not allege that his personal property was taken pursuant to anything other than "random, unauthorized conduct" by Mayfield. Because Pimpton has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in state court, he does not have a Section 1983 due process claim.

To the extent that Pimpton's claim that Mayfield's seizure of his unspecified legal documents constitutes a denial of access to the courts, such claim is without merit. Prisoners have a right of access to the courts protected by the First Amendment right to petition for redress of grievances, and the Fourteenth Amendment guarantees of procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986). The right of access to courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones*, 188 F.3d at 325. In order to recover for a denial of access to the courts, an inmate must show that an "actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented ...." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). Pimpton does not assert that the confiscation of his legal documents prevented him from filing a lawsuit relating to his conviction or the conditions of his confinement. Nor does he state that any pending lawsuits were dismissed as a result of the confiscation of his legal documents. As a result, Pimpton's allegations regarding the loss of his legal materials fail to demonstrate a constitutional violation.

19

**K.    Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pled his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Pimpton has amended his Complaint once after he was provided the applicable law by the Court. (ECF 8). Further, he has fully responded to the Court's questionnaire. Pimpton has pleaded his best case; therefore, leave to amend is unnecessary since Pimpton's claims are legally frivolous.

RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Pimpton's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that Pimpton be issued a strike within the meaning of 28 U.S.C. § 1915(g).

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 5, 2024.

_Lee Ann Reno_
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).